# Supreme Court of Florida

————————

No. SC16-1946

————————

**PATRICK ALBERT EVANS**,
Petitioner,

vs.

**STATE OF FLORIDA**,
Respondent.

————————

No. SC16-2133

————————

**JUAN ROSARIO**,
Petitioner,

vs.

**STATE OF FLORIDA**,
Respondent.

[February 20, 2017]

PER CURIAM.

This Court has for its consideration two petitions for writs of prohibition

filed in Evans v. State, No. SC16-1946, and Rosario v. State, No. SC16-2133.  We

granted Rosario's motion for consolidation and consolidated the two cases for

disposition purposes.  As we explain below, we deny the petitions for writs of

prohibition.

In Evans, the trial court determined that, in light of this Court's decisions in Hurst v. State (Hurst), 202 So. 3d 40 (Fla. 2016), and Perry v. State, 41 Fla. L. Weekly S449 (Fla. Oct. 14, 2016), it would death qualify the jury in Evans' first-degree murder trial and, if Evans were convicted of first-degree murder, proceed to the penalty phase, where it would instruct the jury consistent with this Court's decision in Hurst such that Evans could receive a death sentence if the jury unanimously made the requisite findings of fact and unanimously recommended a sentence of death.

Specifically, the trial court's order in Evans, quoting the transcript of a status check proceeding, indicates the trial court would death qualify a jury and that the jury would be instructed (and the verdict form would reflect) that there are four determinations that the jury would have to find unanimously for the imposition of a death sentence:

I would have four questions on the verdict form.

Number one, do you-all unanimously believe that this aggravating factor was proved beyond a reasonable doubt? . . .

And then, number two, do you unanimously find that the aggravating circumstances are [sufficient]?

Number three, do you [unanimously] find that the aggravating circumstances outweigh any mitigating circumstances?

And then in number four, if you answered "yes" to all of those, do you [unanimously] find that death would be your verdict or would be the proper determination?

Of course, we would instruct them that just because they answered "yes, yes, yes" to the first three, it doesn't mean they have to answer "yes" to four. . . .

And as I said, we would death qualify the jury and let them know that that's what the rules would be. And then if the defendant is, in fact, found guilty of first[-]degree murder, then we would proceed accordingly. I don't think it would be all that hard to draft those instructions. I don't think it would be all that hard to come up with a verdict form.

Evans now seeks a writ of prohibition in this Court to restrain the trial court from proceeding as indicated in its order.

By contrast, the trial court in Rosario initially determined that this Court's decision in Perry prohibits the State from seeking the death penalty in a pending prosecution. The trial court ordered that Rosario's case would proceed with a mandatory life maximum penalty. However, the State challenged this order, and the Fifth District granted the State's petition for a writ of prohibition. Rosario now requests that this Court issue a writ of prohibition restraining the trial court from death qualifying a jury.

## ANALYSIS

In Hurst, 202 So. 3d at 44, after the United States Supreme Court's decision in Hurst v. Florida, 136 S. Ct. 616 (2016), this Court delineated the factual findings and recommendation a jury must unanimously make before a trial court may impose a death sentence:

[T]he Supreme Court's decision in Hurst v. Florida requires that all the critical findings necessary before the trial court may consider imposing a sentence of death must be found unanimously by the jury. . . . In capital cases in Florida, these specific findings required to be made by the jury include the existence of each aggravating factor that has been proven beyond a reasonable doubt, the finding that the aggravating factors are sufficient, and the finding that the aggravating factors outweigh the mitigating circumstances. We also hold . . . that in order for the trial court to impose a sentence of death, the jury's recommended sentence of death must be unanimous.

Thereafter, in Perry, 41 Fla. L. Weekly at S449, this Court addressed "whether the newly enacted death penalty law, passed after the United States Supreme Court held a portion of Florida's capital sentencing scheme unconstitutional in Hurst v. Florida[,] may be constitutionally applied to pending prosecutions." We summarized our holding in Perry as follows:

Ultimately, we conclude that while most of the provisions of the Act can be construed constitutionally and could otherwise be validly applied to pending prosecutions, because the Act requires that only ten jurors, rather than all twelve, recommend a final sentence of death for death to be imposed, the Act is unconstitutional to that extent pursuant to Hurst. . . .

Id. at S451.

As we explained in Perry, "[s]ection 3 of the Act defines the facts required to be found by the jury for a sentence of death to be imposed." Id. Specifically, section 3 of the Act amends sections 921.141(2) and (3), Florida Statutes, to include the following language:

(2)  FINDINGS AND RECOMMENDED SENTENCE BY THE JURY.  This subsection applies only if the defendant has not waived his or her right to a sentencing proceeding by a jury.

(a)  After hearing all of the evidence presented regarding aggravating factors and mitigating circumstances, the jury shall deliberate and determine if the state has proven, beyond a reasonable doubt, the existence of at least one aggravating factor set forth in subsection (6).

(b)  The jury shall return findings identifying each aggravating factor found to exist.  A finding that an aggravating factor exists must be unanimous.  If the jury:

1.  Does not unanimously find at least one aggravating factor, the defendant is ineligible for a sentence of death.

2.  Unanimously finds at least one aggravating factor, the defendant is eligible for a sentence of death and the jury shall make a recommendation to the court as to whether the defendant shall be sentenced to life imprisonment without the possibility of parole or to death.  The recommendation shall be based on a weighing of all of the following:

a.  Whether sufficient aggravating factors exist.

b.  Whether aggravating factors exist which outweigh the mitigating circumstances found to exist.

c.  Based on the considerations in sub-subparagraphs a. and b., whether the defendant should be sentenced to life imprisonment without the possibility of parole or to death.

(c)  If at least 10 jurors determine that the defendant should be sentenced to death, the jury's recommendation to the court shall be a sentence of death.  If fewer than 10 jurors determine that the defendant should be sentenced to death, the jury's recommendation to the court shall be a sentence of life imprisonment without the possibility of parole.

(3)  IMPOSITION OF SENTENCE OF LIFE IMPRISONMENT OR DEATH.—

(a)  If the jury has recommended a sentence of:

1.  Life imprisonment without the possibility of parole, the court shall impose the recommended sentence.

2.  Death, the court, after considering each aggravating factor found by the jury and all mitigating circumstances, may impose a sentence of life imprisonment without the possibility of parole or a

> sentence of death.  The court may consider only an aggravating factor that was unanimously found to exist by the jury.

Ch. 2016-13, § 3, at 233-34, Laws of Fla.

In Perry, 41 Fla. L. Weekly at S452, this Court explained that "[c]onsistent with our decision in Hurst, we construe [this amended] section 921.141(2)(b)2. to require the penalty phase jury to unanimously find beyond a reasonable doubt that each aggravating factor exists, that sufficient aggravating factors exist to impose death, and that they outweigh the mitigating circumstances found to exist."  This Court in Perry, id. at S453, also concluded that the provision of the Act amending section 921.141(2)(c) "is unconstitutional because it requires that only ten jurors recommend death as opposed to the constitutionally required unanimous, twelve-member jury."

Accordingly, pursuant to our holding in Perry, the revised statutory scheme in chapter 2016-13, Laws of Florida, can be applied to pending prosecutions because "most of the provisions of the Act can be construed constitutionally and [can] otherwise be validly applied to pending prosecutions."  Id. at S451. Importantly, however, the provision of the Act identified as problematic in Perry, which amends section 921.141(2)(c),[1] can only be constitutionally applied under

---

1. To be clear, the provision identified as problematic in Perry provides the following:

our decisions in <u>Hurst</u> and <u>Perry</u> to pending prosecutions for a jury recommendation of death if twelve jurors unanimously determine that a defendant should be sentenced to death.  Therefore, we deny Evans' and Rosario's petitions for writs of prohibition.[2]  The trial courts in <u>Evans</u> and <u>Rosario</u> may proceed with death qualifying juries.

It is so ordered.

---

> If at least 10 jurors determine that the defendant should be sentenced to death, the jury's recommendation to the court shall be a sentence of death.  If fewer than 10 jurors determine that the defendant should be sentenced to death, the jury's recommendation to the court shall be a sentence of life imprisonment without the possibility of parole.

§ 921.141(2)(c), Fla. Stat. (2016).

2.  It is unnecessary to address the State's motion to toll speedy trial in <u>Rosario</u> at this time because Rosario is the one who filed the petition for a writ of prohibition in this Court.  <u>See</u> <u>Barker v. Wingo</u>, 407 U.S. 514, 529 (1972) ("[I]f delay is attributable to the defendant, then his waiver [of the right to speedy trial] may be given effect under standard waiver doctrine, the demand rule aside."); <u>Carroll v. State</u>, 251 So. 2d 866, 871 (Fla. 1971) ("If [the accused] elects to proceed through prohibition, an automatic stay is instituted once the rule has been issued, thereby subjecting the accused to a tolling of time while his petition is pending.").  We transfer the State's motion to toll speedy trial to the trial court upon issuance of this Court's mandate.  <u>See</u> <u>State v. Jenkins</u>, 389 So. 2d 971, 974 (Fla. 1980) ("The trial judge is in the best position to make certain under the individual facts of the case that an extension of time will not deprive the defendant of this constitutional right to a speedy trial.").

CANADY, POLSTON, and LAWSON, JJ., concur.
POLSTON, J., concurs with an opinion, in which CANADY and LAWSON, JJ., concur.
LABARGA, C.J., concurs in result with an opinion, in which LEWIS, J., concurs.
PARIENTE, J., concurs in part and dissents in part with an opinion, in which QUINCE, J., concurs.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

POLSTON, J., concurring.

While I continue to believe that the Act is not unconstitutional under the United States Supreme Court's decision in Hurst v. Florida, see Perry, 41 Fla. L. Weekly at S453 (Canady, J., dissenting), I agree with today's decision that the Act can be applied to pending prosecutions under the majority's decision in Hurst with a unanimous jury recommendation for a death sentence.

CANADY and LAWSON, JJ., concur.

LABARGA, C.J., concurring in result.

I concur with the conclusion reached by the majority, but write separately to highlight that my agreement is based upon a determination that the provision we identified as problematic in Perry is severable from the remainder of the Act. The judicial branch has an obligation to "uphold the constitutionality of legislative enactments where it is possible to strike only the unconstitutional portions." Ray

v. Mortham, 742 So. 2d 1276, 1280 (Fla. 1999).  However, we did not perform a

severability analysis in Perry.[3]  The longstanding severability test provides:

> When a part of a statute is declared unconstitutional the remainder of
> the act will be permitted to stand provided: (1) the unconstitutional
> provisions can be separated from the remaining valid provisions,
> (2) the legislative purpose expressed in the valid provisions can be
> accomplished independently of those which are void, (3) the good and
> the bad features are not so inseparable in substance that it can be said
> that the Legislature would have passed the one without the other and,
> (4) an act complete in itself remains after the invalid provisions are
> stricken.

Cramp v. Bd. of Pub. Instr., 137 So. 2d 828, 830 (Fla. 1962).

Applying this criteria, I would conclude that the unconstitutional portion of

the Act can be separated from the rest, and a complete law remains in its absence.

Even after striking subsection 921.141(2)(c) as amended, the Act still requires a

jury to find the existence of aggravating circumstances, determine whether those

aggravating circumstances are sufficient to impose death, and weigh the

---

3.  I recognize that Perry contains what appear to be conflicting statements
as to whether the Act is invalid in whole or in part.  Earlier in the decision, we
stated that "while most of the provisions of the Act can be construed
constitutionally and could otherwise be validly applied to pending prosecutions,
because the Act requires that only ten jurors, rather than all twelve, recommend a
final sentence of death for death to be imposed, the Act is unconstitutional to that
extent pursuant to Hurst." 41 Fla. L. Weekly at S451 (emphasis added).  However,
we later articulated a broader holding by stating "the Act's 10-2 jury
recommendation requirement renders the Act unconstitutional." Id. at S453
(emphasis added).  My conclusion as to severability leads me to reconsider our
earlier determination that the Act "cannot be applied to pending prosecutions." Id.

aggravating circumstances against the mitigating circumstances that have been found to exist. Moreover, the requirement that the jury issue a sentencing recommendation remains intact in subsection 921.141(2)(b).

Further, capital prosecutions are able to proceed in the absence of the stricken subsection. Trial courts can, as the court in Evans indicated it would, instruct juries that unless they unanimously find the critical facts, and unless the recommendation for death is unanimous, the recommendation shall be for a sentence of life imprisonment without the possibility of parole. With regard to this conclusion, it is important to note that the jury does not read the statute; it only receives instructions from the court and a recommendation form. If the jury is instructed according to the law, and as required by Hurst, I believe there is no substantial or relevant difference between the operation of the statute with the offending subsection and the operation of the statute without it.

With regard to the second prong of the Cramp test, the legislative purpose in the constitutional portions of the Act—having a viable death penalty statute—can be accomplished without language that provides a specific number of votes before a jury may recommend a sentence of death. Lastly, and in the same vein, the "good" and the "bad" provisions of the Act are not so inseparable that it can be said the Legislature would not have enacted the chapter law without the invalid subsection. It is fairly clear that the Florida Legislature desires to have capital

punishment as an available option for those defendants who commit the most aggravated and least mitigated of murders. Therefore, if faced with the alternative of having no capital sentencing law whatsoever in the State of Florida, I believe the Legislature would have enacted the constitutional provisions of the Act without the invalid subsection.

Based upon the foregoing, I would conclude that the unconstitutional provision is severable from the remainder of the Act. Accordingly, with jury instructions and a recommendation form that conform to the requirements of Hurst, I agree with the majority that the Act may be applied to pending capital prosecutions.

LEWIS, J., concurs.

PARIENTE, J., concurring in part and dissenting in part.

I agree that trial courts may proceed with the guilt phase of pending capital prosecutions, but I dissent from allowing the penalty phase to proceed until the Legislature acts to remedy the constitutional problems with chapter 2016-13, Laws of Florida (the Act), that this Court identified in Perry v. State, 41 Fla. L. Weekly S449 (Fla. Oct. 14, 2016).[4] While it may appear that the solution requires only the

---

4. Just as the Legislature enacted a new law following the United States Supreme Court's decision in Hurst v. Florida, 136 S. Ct. 616 (2016), I have every confidence that the Legislature will enact new legislation addressing the constitutional issues raised by Hurst v. State (Hurst), 202 So. 3d 40 (Fla. 2016), and Perry, in the upcoming legislative session. In fact, two identical bills—one

simple fix of the trial court judge substituting the 10-2 vote requirement for the jury's final recommendation to impose death with a unanimous vote requirement, the plurality disregards this Court's longstanding precedent on severability, which precludes the judiciary from rewriting legislation.[5] In fact, the plurality fails to even explain how a valid capital sentencing scheme "complete in itself" remains after Perry unless the Act's unconstitutional provisions are rewritten judicially. Cramp v. Bd. of Pub. Instr., 137 So. 2d 828, 830 (Fla. 1962).

In this Court's longstanding severability analysis, "the key determination is whether the overall legislative intent is still accomplished without the invalid

---

proposed by the House and one by the Senate—have already been filed seeking to remedy the Act's constitutional infirmities as identified in Hurst and Perry. See Fla. HB7101 (2016); Fla. SB7068 (2016).

    5. Subsection 921.141(2)(c) currently provides:

> If at least 10 jurors determine that the defendant should be sentenced to death, the jury's recommendation to the court shall be a sentence of death. If fewer than 10 jurors determine that the defendant should be sentenced to death, the jury's recommendation to the court shall be a sentence of life imprisonment without the possibility of parole.

Subsection 921.142(3)(c) currently provides:

> If at least 10 jurors determine that the defendant should be sentenced to death, the jury's recommendation to the court shall be a sentence of death. If fewer than 10 jurors determine that the defendant should be sentenced to death, the jury's recommendation to the court shall be a sentence of life imprisonment without the possibility of parole.

- 12 -

provisions." State v. Catalano, 104 So. 3d 1069, 1080-81 (Fla. 2012) (citing Martinez v. Scanlan, 582 So. 2d 1167, 1173 (Fla. 1991)) (emphasis added). The inquiry is whether "the law's invalid provisions can be severed," not whether this Court may sever and replace the unconstitutional provisions to revive the Act. Lawnwood Med. Ctr., Inc. v. Seeger, 990 So. 2d 503, 518 (Fla. 2008).

I recognize that Chief Justice Labarga conducts a severability analysis in his concurring in result opinion. In fact, I agree with Chief Justice Labarga that "the unconstitutional portion of the Act can be separated from the rest" of the Act. Concurring in result op. at 10 (Labarga, C.J.). Indeed, in Perry, this Court "determin[ed] that the sentencing recommendation is a separate conclusion distinct from the jury's findings" because "[i]t has long been true that a juror is not required to recommend the death sentence even if the jury concludes that the aggravating factors outweigh the mitigating circumstances." Perry, 41 Fla. L. Weekly at S452. However, I disagree that "a complete law remains in [the] absence," of the Act's unconstitutional provisions unless individual courts rewrite those provisions during capital sentencing proceedings. Concurring in result op. at 9 (Labarga, C.J.).[6] Likewise, as the trial court in Rosario originally determined, I

---

6. See Seeger, 990 So. 2d at 518 ("The judicial doctrine of severability is 'derived from the respect of the judiciary for the separation of powers.' " (quoting Ray v. Mortham, 742 So. 2d 1276, 1280 (Fla. 1999)); State v. Elder, 382 So. 2d 687, 690 (Fla. 1980) ( ("The Court will not . . . abandon judicial restraint and

- 13 -

disagree that the plurality's solution—"[t]rial courts. . . instruct[ing] juries"

consistent with our holding in Hurst v. State (Hurst), 202 So. 3d 40 (Fla. 2016)—is

constitutionally sound. Concurring in result op. at 10 (Labarga, C.J.).

After our decision in Hurst, a trial judge cannot sentence a capital defendant

to death in Florida without a jury's unanimous final recommendation for death.

202 So. 3d at 44. Therefore, severing the jury's final sentence recommendation,

which "is tantamount to the jury's verdict in the sentencing phase of trial," from

the Act would gut the capital sentencing statute. Id. at 54. Thus, I conclude that

the Act's 10-2 requirement for the jury's final recommendation of death—found in

sections 921.141(2)(c) and 921.142(3)(c)—is not severable from the Act's other

provisions, which were construed as constitutional in Perry.[7] Accordingly, I would

conclude that the Act is void in its entirety and "cannot be applied to pending

prosecutions." Perry, 41 Fla. L. Weekly at S453.

---

invade the province of the legislature by rewriting its terms." (citing Brown v. State, 358 So. 2d 16, 20 (Fla. 1978)).

7. The Delaware Supreme Court similarly held, after Hurst v. Florida, that they were "unable to discern a method by which to parse the[ir] [capital sentencing] statute so as to preserve it." Rauf v. Delaware, 145 A.3d 430, 434 (Del. 2016). The Delaware Supreme Court elaborated, "Because we see no way to sever § 4209, the decision whether to reinstate the death penalty . . . and under what procedures, should be left to the General Assembly." Id. Unlike this Court in Hurst and Perry, the Delaware Supreme Court also commuted all previously imposed death sentences to life. Powell v. Delaware, 2016 WL 7243546, at *5 (Del. Dec. 15, 2016).

I assume the plurality's judicial fix is temporary until the Legislature enacts new legislation, but what remains uncertain is whether additional appellate issues will be created by penalty phase proceedings conducted without the benefit of a new statute. Such concerns are precisely why it is for the Legislature, not this Court, to enact legislation curing the Act's fatal 10-2 provisions, assuming the Legislature intends for the death penalty to continue to be imposed in Florida. For the reasons explained above, I dissent to allowing trial courts to proceed with the penalty phase of pending capital prosecutions.[8]

QUINCE, J., concurs.

Original Proceedings – Prohibition

Allison Ferber Miller and Jane Allie McNeill, Assistant Public Defenders, Sixth Judicial Circuit, Clearwater, Florida; and Peter Mills, Assistant Public Defender, Tenth Judicial Circuit, Bartow, Florida,

    for Petitioner Patrick Albert Evans

Roger L. Weeden of the Law Office of Roger L. Weeden, Orlando, Florida,

    for Petitioner Juan Rosario

---

8. I concur in part because I agree that trial courts are not prohibited from proceeding to death qualify the jury and proceeding to the guilt phase of pending capital prosecutions because the death penalty itself was not declared unconstitutional by Hurst v. Florida or Hurst. However, in addition to my disagreement on allowing the penalty phase of pending prosecutions to proceed, I disagree with the plurality receding from the penultimate conclusion in Perry that the Act "cannot be applied to pending prosecutions" without explanation and, in a separate order, denying the pending motion for clarification in Perry as moot rather than granting clarification and explaining how the remaining parts of the Act can be applied to pending prosecutions. Perry, 41 Fla. L. Weekly at S453.

Pamela Jo Bondi, Attorney General, Tallahassee, Florida; and Christina Z. Pacheco, Assistant Attorney General, and Timothy Arthur Freeland, Assistant Attorney General, Tampa, Florida,

for Respondent