# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE )
)
v. ) I.D. No. 0104015882
)
CHAUNCEY STARLING, )
)
Defendant. )

## ORDER

*Upon State's Motion* **in Limine** *to Exclude Testimony of Forensic Investigation Expert Robert Tressel*
**DENIED**

*Upon Starling's Motion* **in Limine** *to Exclude Evidence of Starling's Nickname*
**GRANTED**

Submitted: January 25, 2017
Decided: January 26, 2017

This case arises from the deaths of Darnell Evans and Damon Gist Jr. on March 9, 2001. On October 24, 2003, following trial, a jury found Defendant Chauncey Starling guilty of two counts of Murder in the First Degree. Starling was subsequently sentenced to death.

On December 14, 2016, the Delaware Supreme Court reversed Starling's convictions and remanded the case to this Court for a new trial. On remand, the parties have presented numerous evidentiary challenges. This is the Court's decision regarding (1) the State's Motion *in Limine* to Exclude Testimony of

Starling's Forensic Investigation Expert Robert Tressel; and (2) Starling's Motion *in Limine* to Exclude Evidence of Starling's Nickname.

Upon consideration of the parties' submissions; the Superior Court Criminal Rules; the facts, arguments, and legal authorities set forth by the parties; statutory and decisional law; and the entire record in this case, the Court hereby finds as follows:

1. On March 9, 2001, Darnell Evans, an adult, and Damon Gist Jr., a five-year old child, were shot to death at the Made-4-Men Barbershop on Fourth Street between Market and Shipley Streets in Wilmington, Delaware.

2. On April 27, 2001, following an investigation, Starling was arrested for the shootings. On November 5, 2001, a grand jury indicted Starling for two counts of Murder in the First Degree, two counts of Possession of a Firearm during Commission of a Felony, and one count of Conspiracy in the First Degree.

3. On October 24, 2003, following trial, a jury convicted Starling on each count of the indictment. The jury unanimously agreed on the existence of three statutory aggravating circumstances[1] and unanimously recommended the

---

[1] *See* 11 *Del. C.* § 4209(e), *declared unconstitutional by Rauf v. State*, 145 A.3d 430 (Del. 2016).

death penalty. On June 10, 2004, Starling was sentenced to death for the murders of Darnell Evans and Damon Gist Jr.[2]

4. On February 8, 2005, Starling filed a direct appeal from his conviction and sentence to the Delaware Supreme Court. By Opinion dated August 16, 2005, the Delaware Supreme Court affirmed Starling's conviction but vacated his death sentence.[3] The Delaware Supreme Court remanded the case to the Superior Court for resentencing.[4]

5. On October 2, 2005, the Superior Court resentenced Starling to death for each count of Murder in the First Degree. The Delaware Supreme Court affirmed Starling's death sentences on Starling's second direct appeal.[5]

6. In April 2007, Starling filed three motions for postconviction relief as a self-represented litigant pursuant to Superior Court Criminal Rule 61. The Court appointed counsel ("Rule 61 Counsel") to represent Starling during postconviction proceedings.

7. On April 1, 2008, Rule 61 Counsel filed an amended motion for postconviction relief. Thereafter, the parties submitted numerous motions and

---

[2] The Delaware Supreme Court recently declared Delaware's capital sentencing scheme unconstitutional. *Rauf v. State*, 145 A.3d 430 (Del. 2016). The Supreme Court has also held that *Rauf* retroactively applies to death sentences that were final at the time *Rauf* was decided. *Powell v. State*, 2016 WL 7243456 (Del. Dec. 15, 2016).

[3] *Starling v. State*, 882 A.2d 747 (Del. 2005).

[4] *Id.* at 759.

[5] *Starling v. State*, 903 A.2d 758 (Del. 2006).

responses and the Court held numerous hearings. Supplemental briefing for Starling's motion for postconviction relief concluded on May 30, 2014. By Memorandum Opinion dated August 28, 2014, this Court denied Starling's motion for postconviction relief.[6]

8. On September 22, 2014, Starling filed a direct appeal from this Court's Memorandum Opinion denying Starling's motion for postconviction relief. By Opinion dated December 14, 2015, the Delaware Supreme Court reversed and remanded Starling's convictions, granting Starling a new trial.[7]

9. On remand for a new trial, the State seeks to exclude the testimony of Starling's forensic investigation expert Robert Tressel at trial. Although the State expressly recognizes that Tressel is a qualified forensic investigator, the State contends that Tressel's opinion is not relevant to this particular case, will not assist the trier of fact, and has the potential to confuse the jury. The State asserts that Tressel's opinion is baseless, and amounts to conclusory "Monday morning quarterbacking" of the investigation that led to Starling's arrest. The State asserts that the propriety of the Starling investigation can be adequately addressed through cross-examination of investigating detectives, who are in the best position to answer questions regarding the investigation in this case.

---

[6] *State v. Starling*, 2014 WL 4386127 (Del. Super. Aug. 28, 2014).
[7] *Starling v. State*, 130 A.3d 316 (Del. 2015).

4

10.    The admissibility of expert testimony is governed by Delaware Rule of Evidence ("DRE") 702, which provides:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.[8]

11.    The Delaware Supreme Court has ruled that the admissibility of expert testimony under DRE 702 is governed by the same test set forth by the United States Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*[9] Consistent with *Daubert*, the Court considers a five-step test to determine whether expert testimony is admissible at trial.[10] The Court must determine whether:

(1)    the witness is qualified as an expert by knowledge, skill, experience, training or education;
(2)    the evidence is relevant;
(3)    the expert's opinion is based upon information reasonably relied upon by experts in that particular field;
(4)    the expert testimony will assist the trier of fact to understand the evidence or determine a material fact in issue; and
(5)    the expert testimony will not create unfair prejudice or confuse or mislead the jury.[11]

---

[8] D.R.E. 702.

[9] *M.G. Bancorporation, Inc. v. Le Beau*, 737 A.2d 513, 521–22 (Del. 1999) (citing *Daubert v. Merrell Dow Pharm, Inc.*, 509 U.S. 579 (1993)).

[10] *Bowen v. E.I. DuPont de Nemours & Co.*, 906 A.2d 787, 795 (Del. 2006).

[11] *Smith v. Grief*, 2015 WL 128004, at *2 (Del. Jan. 8, 2015) (citing *Bowen*, 906 A.2d at 794); *Pallano v. AES Corp.*, 2016 WL 750432, at *3 (Del. Super. Feb. 26, 2016).

The party seeking to introduce expert testimony bears the burden of establishing admissibility by a preponderance of the evidence.[12]

12. The decision to admit expert testimony is not a conclusion that the expert's opinion is correct. Rather, the trial judge's role as gatekeeper[13] is limited to determining "whether the proponent of the evidence has demonstrated that scientific conclusions have been generated using sound and reliable approaches."[14] Expert opinions are admissible where they assist the trier of fact in understanding the facts or evidence presented at trial[15] and are otherwise the relevant product of reliable methodology.[16] "Once the trial court has determined that a witness is competent to testify as an expert, challenges to the expert's skill or knowledge go to the weight to be accorded the expert testimony rather than its admissibility."[17]

13. This Court is satisfied that Tressel is competent to testify as an expert in forensic investigation under DRE 702. The State acknowledges that Tressel's

---

[12] *Pavey v. Kalish*, 2010 WL 3294304, at *3 (Del. 2010); *Sturgis v. Bayside Health Ass'n*, 942 A.2d 579, 584 (Del. 2007).

[13] *Pavey*, 2010 WL 3294304, at *3; *Sturgis*, 942 A.2d at 583.

[14] *State v. McMullen*, 900 A.2d 103, 114 (Del. Super. 2006) (citing *In re Paoli R. R. Yard PCB Litig.*, 35 F.3d 717, 744 (3d Cir. 1994)).

[15] *Pavey*, 2010 WL 3294304, at *3; *Ward v. Shoney's, Inc.*, 817 A.2d 799, 803 (Del. 2003); *Sweiger v. Delaware Park, L.L.C.*, 2013 WL 6667339, at *4 (Del. Super. Dec. 9, 2013).

[16] *Rodriguez v. State*, 30 A.3d 764, 769 (Del. 2011); *McNally v. State*, 980 A.2d 364, 368 (Del. 2009) *M.G. Bancorporation, Inc.*, 737 A.2d at 521.

[17] *Perry v. Berkley*, 996 A.2d 1262, 1270–71 (Del. 2010) (quoting *Sylla-Sawdon v. Uniroyal Goodrich Tire Co.*, 47 F.3d 277, 283 (8th Cir. 1995)).

training, education, and experience qualify him as an expert in forensic investigation. Moreover, the proper procedures for a homicide investigation constitute specialized knowledge that is not possessed by the average trier of fact.[18] This Court disagrees with the State's contention that Tressel's opinions are based on irrelevant generalities that are certain to create confusion. To the contrary, the Court finds that Tressel's testimony will assist the trier of fact in considering a complex and highly relevant issue to this case: the adequacy of the Starling homicide investigation. There is no indication that Tressel has an insufficient or unreliable basis to assess the adequacy of a homicide investigation, or that Tressel fails to tie his opinion to specific issues of material importance. The Court is satisfied that any generalized conclusions in Tressel's testimony are made applicable to the particular facts of this case.[19]

14. Upon a preponderance of the evidence,[20] this Court finds that Tressel has a reliable basis of knowledge and experience in the relevant discipline of forensic investigation.[21] Accordingly, Tressel is competent to offer testimony regarding the adequacy of the Starling homicide investigation pursuant to DRE

---

[18] *See Pennell v. State*, 602 A.2d 48, 55 (Del. 1991); *State v. Wright*, 2009 WL 3111047, at *3 (Del. Super. Sept. 14, 2009).

[19] *See McNally v. State*, 980 A.2d 364, 369 (Del. 2009).

[20] *Bowen*, 906 A.2d at 795.

[21] *McNally*, 980 A.2d at 370; *Price v. Blood Bank of Delaware, Inc.*, 790 A.2d 1203, 1210 (Del. 2002); *M.G. Bancorporation, Inc.*, 737 A.2d at 523; *Williams v. Desperito*, 2011 WL 7452803, at *3 (Del. Super. Oct. 24, 2011).

702. Because Tressel is a qualified expert witness, this Court finds that the State's evidentiary challenge goes to the weight of Tressel's testimony and not its admissibility.[22] The State may challenge Tressel's testimony through the traditional means of attacking admissible evidence, including cross-examination and presentation of competing evidentiary theories.[23] The State's Motion *in Limine* to Exclude Testimony of Starling's Forensic Investigation Expert Robert Tressel is therefore denied.

15. Starling seeks to exclude evidence and testimony regarding Starling's nickname "Smoke" as irrelevant and unfairly prejudicial pursuant to DRE 403. Starling argues that the probative value of the nickname is substantially outweighed by the potential for unfair prejudicial inferences by the jury as to the nickname's meaning and Starling's criminal disposition.

16. DRE 403 permits the exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence." Relevant evidence is

---

[22] *See Perry*, 996 A.2d at 1270–71("Once the trial court has determined that a witness is competent to testify as an expert, challenges to the expert's skill or knowledge go to the weight to be accorded the expert testimony rather than its admissibility"); *id.* at 1270 ("Weight and credibility challenges, on the other hand, relate to an expert's skill or knowledge in being able to tie the facts of the case to the opinion he or she plans to give.").

[23] *See State v. Phillips*, 2015 WL 5168253, at *4 (Del. Super. Sept. 2, 2015) (quoting *Daubert*, 509 U.S. at 596).

defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[24] "To be considered relevant, the purpose for which the evidence is offered must be material and probative."[25] "The determination of whether the probative value of a particular piece of evidence is substantially outweighed by the danger of unfair prejudice is a matter which falls particularly within the discretion of the trial judge, who has the first-hand opportunity to evaluate relevant factors."[26]

17. This Court finds that the probative value of evidence concerning Starling's nickname "Smoke" is substantially outweighed by the danger of unfair prejudice. Although the State contends that evidence regarding Starling's nickname is probative for identification purposes, the State fails to specify a factual basis that demonstrates the relationship between the nickname and Starling's identity as the perpetrator of the March 9, 2001 murders of Darnell Evans and Damon Gist, Jr. Moreover, the State fails to show how presentation of Starling's

---

[24] D.R.E. 401.
[25] *Hansley v. State*, 104 A.3d 833, 837 (Del. 2014) (quoting *Norwood v. State*, 95 A.3d 588, 598 (Del. 2014)). *See also Lilly v. State*, 649 A.2d 1055, 1060 (Del. 1994) ("The definition of relevant encompasses materiality and probative value.").
[26] *Gallaway v. State*, 65 A.3d 564, 571 (Del. 2013) (quoting *Williams v. State*, 494 A.2d 1237, 1241 (Del. 1985)).

nickname is relevant, i.e. how it makes Starling's culpability for these two murders more or less likely.[27]

18.    This Court agrees with Starling's contention that introducing the nickname "Smoke" may cause the jury to draw prejudicial inferences as to Starling's criminal disposition in the specific context of this case. It is quite conceivable that a jury may infer that Starling's nickname is derived from previous acts of violence, i.e., that Starling has previously killed, or "smoked," someone. "When a defendant charged with a crime of violence is identified before a jury by a nickname that bespeaks guilt, violence, or depravity, the potential for prejudice is obvious."[28] Considering that Starling is on trial for Murder in the First Degree, this Court finds that the potential for the nickname's prejudicial impact is greater than under circumstances that do not involve allegations of violent criminal conduct.

---

[27] *Cf. United States v. Emuegbunam*, 268 F.3d 377, 394 (6th Cir. 2001) ("It is clear, however, that the use of an alias in an indictment and in evidence is permissible if it is necessary to connect the defendants with the acts charged."); *Hall v. State*, 2013 WL 992550, at *1 (Del. Mar. 12, 2013) (holding that the admission of Defendant's nickname "Nasty Nate" was appropriate where the record showed that the term "Nasty" did not improperly suggest criminal propensity and was probative of the perpetrator's identity); *Fullman v. State*, 2011 WL 6009670, at *3 (Del. Dec. 1, 2011) (holding that having Defendant display his facial scar and tattoos during trial was appropriate where evidence of Defendant's physical appearance was highly probative to identifying Defendant as a perpetrator of robbery). *See also* D.R.E. 401 ("'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.").
[28] *United States v. Farmer*, 583 F.3d 131, 136 (2d Cir. 2009).

19.     In the specific circumstances of this case, the probative value of the nickname "Smoke" is substantially outweighed by the danger of unfair prejudice. Accordingly, Starling's Motion *in Limine* to Exclude Evidence of Starling's Nickname is therefore granted.

**NOW, THEREFORE**, this 26th day of January, 2017, the State's Motion *in Limine* to Exclude the Testimony of Forensic Investigation Expert Robert Tressel is hereby DENIED, and Starling's Motion *in Limine* to Exclude Evidence of Starling's Nickname is hereby GRANTED.

**IT IS SO ORDERED.**

_____
**The Honorable Andrea L. Rocanelli**

11